Box et al. *v.* City of Cleveland Board of Building Standards and Building Appeals.

Box et al., d. b. a. Oakwood Nursing Home ow. Oakwood Sanitarium, Appellants, v. Department of Health, Appellee.

Box et al, d. b. a. Oakwood Nursing Home ow. Oakwood Sanitarium, Appellant, *v.* Department of Health, Appellee.

[Cite as Box v. City of Cleveland, 15 Ohio Misc. 17.]

(Nos. 822796, 828803, 843622—Decided January 19, 1968.)

Common Pleas Court of Cuyahoga County.

*Mr. Lody Huml,* for appellants Ernest C. Box and others.

*Mr. William Saxbe,* attorney general, and *Miss Winifred A. Dunton,* for appellee in cases Nos. 838803 and 843622.

*Mr. Paul White,* director of law, and *Mr. William H. Chavers,* for appellee in case No. 822796.

McMONAGLE, J.  The above caption appeals have been heretofore ordered tried together.  At the first hearing in this court it was agreed by counsel for all parties, that the decision of the court in case No. 822796, Ernest C. Box, et al., etc., appellant, v. the City of Cleveland, Board of Building Standards and Building Appeals, appellee, shall be dispositive of all three appeals.  The appellant will be referred to as Box, the appellee City of Cleveland, Board of Building Standards and Building Appeals as the Board, and the Director and/or the Department of Health of the state of Ohio, appellee, as State.

Each of the appeals is concerned with or related to the efforts of Box to procure the approval and/or licensing of its two buildings located at 8909-9007 Detroit Avenue, Cleveland, Ohio, for their continued use as a "home" under the provisions of Chapter 3721, Revised Code, and as defined in Section 3721.01, Revised Code.

Box has operated a so-called nursing home at 8909-9007 Detroit Avenue since about 1941.  The record indicates that this operation was conducted with the approval of the city of Cleveland and under licenses issued by State.

Practically all of the persons cared for by Box have been placed with it by the Division of Aid for the Aged of the Welfare Department of the state of Ohio or by the Welfare Department of Cuyahoga County.  Females are housed in the building on 8909 Detroit Avenue, and males are housed at 9007 Detroit Avenue.

Portions of the following statutes of the Revised Code of Ohio are pertinent to the within actions:

CHAPTER 3721: REST HOMES; NURSING HOMES.

3721.01  *Definitions and classification.*

As used in Sections 3721.01 to 3721.09, inclusive, and 3721.99 of the Revised Code, "home" means an institution, residence, facility, or other place, part, or unit thereof, however named, in this state which is advertised, offered, maintained, or operated by the ownership, or management, for a period of more than twenty-four hours, whether for a consideration or not, for the express or implied purpose of providing accommodations and personal assistance, or which does in fact provide accommodations and personal assistance, to three or more persons, who are dependent upon the services of others, or which provides skilled nursing and dietary care for persons who are ill or otherwise incapacitated, or which provides services for the rehabilitation of persons who are convalescing from illness or incapacitation, and which is not a "hospital" as defined under Section 3701.07 of the Revised Code nor a public hospital or hospital as defined in Section 5122.01 of the Revised Code. Individuals who are related to the owner or operator by blood or marriage within the third degree of consanguinity are excepted from the provisions of this section.

Such homes are classified as follows:

(A) A nursing home is any home used for the reception and care, for a consideration or not, of three or more persons who by reason of illness, physical or mental impairment require skilled nursing care. A nursing home is licensed to provide personal assistance as required and skilled nursing care. Skilled nursing care means those procedures commonly employed in providing for the physical, emotional, and rehabilitation needs of the ill or otherwise incapacitated which require technical skills and knowledge beyond that which the untrained person possesses, including without limitation procedures such as: irrigations, catheterizations, application of dressings, and supervision of special diets; objective observation of changes in patient condition as a means of analyzing and determining nursing care required and the need for further medical diagnosis and treatment; special procedures contributing to rehabilitation; administration of medication by any method ordered by a physician such as hypodermically, rectally, or

orally; and carrying out other treatments prescribed by the physician which involve a like level of complexity and skill in administration.

A nursing home may admit persons not requiring skilled nursing care.

(B) A rest home is any home which provides personal assistance, for a consideration or not, for three or more persons who are dependent on the services of others by reason of age or physical or mental impairment but who do not require skilled nursing care. A rest home is licensed to provide accommodations and personal services which may include any of the following: help in walking, in bathing, in dressing, in feeding, or in getting in or out of bed, or supervision required because of the age or mental impairment of the residents. Mental impairment excludes mental illness as defined in Section 5122.01 of the Revised Code and mental retardation as defined in Section 5125.011 of the Revised Code. A rest home may not admit or keep residents requiring skilled nursing care.

(C) A home for the aging is any home which provides personal assistance, for a consideration or not, for three or more persons who are dependent on the services of others by reason of age and physical or mental impairment, but do not require skilled nursing care, and which also provides skilled nursing care, for a consideration or not, for three or more persons who by reason of age and either illness, physical or mental impairment require skilled nursing care. That facility, part, or unit thereof, that provides personal assistance is licensed as a rest home pursuant to Sections 3721.01 to 3721.09, inclusive, and Section 3721.99 of the Revised Code. That facility, part, or unit thereof, that provides skilled nursing care is licensed as a nursing home pursuant to Sections 3721.01 to 3721.09, inclusive, and Section 3721.99 of the Revised Code.

(D) The public health council may further classify such homes.

Nothing contained in Sections 3721.01 to 3721.09, inclusive, of the Revised Code, or the rules and regulations adopted pursuant thereto, shall be construed as authorizing the supervision, regulation, or control of the spiritual care

or treatment of residents or patients in any home who rely upon treatment by prayer or spiritual means in accordance with the creed or tenets of any recognized church or religious denomination.

3721.02 *Licensing by director of health; delegation of licensing authority; inspection; distribution of fees.*

The director of health shall license homes defined in Section 3721.01 of the Revised Code and shall establish procedures to be followed in inspecting and licensing such homes. Each home shall be inspected by the director at least once in each calendar year commencing in the first full calendar year after the date of the issuance of a license. The department of industrial relations, a certified municipal or county building department, or the state fire marshal shall also inspect a home when requested by the director. The director of health may delegate his authority and duties under Chapter 3721. of the Revised Code to any division, bureau, agency, or official of the department of health or to the board of health or other health authority of a city or general health district. All fees collected by the director for the issuance or renewal of licenses are to be deposited in the state treasury to the credit of the nursing and rest home license fee rotary fund created by this section. The moneys credited to this fund are to be distributed in the following manner:

(A) When the director permits a city or general health district to inspect licensed homes in lieu of inspection by the department of health, he shall stipulate that the license renewal fees of such homes be returned to such local agency. The director shall certify a list of the health districts eligible to receive such fees and the amount each is to receive to the treasurer of state. Thereupon, the treasurer shall pay such amounts from the nursing and rest home license fee rotary fund.

(B) All moneys remaining to the credit of the nursing and rest home license fee rotary fund on the thirty-first day of December of each year shall be transferred by the treasurer to the general revenue fund.

3721.03 *Enforcement; revocation of license.*

The director of health shall enforce the provisions of

Sections 3721.01 to 3721.09, inclusive, and 3721.99 of the Revised Code, and may issue orders to secure compliance with the provisions of these sections and the rules and regulations made pursuant thereto. He may hold hearings, issue subpoenas, compel testimony, and make adjudications. In the event the director finds, upon hearing, that any person, firm, partnership, association, or corporation licensed under Section 3721.07 of the Revised Code is in violation of any of the provisions of Chapter 3721. of the Revised Code, or any of the regulations made by the public health council, or in violation of any order issued by the director, or that such licensee is not, or any of its principals are not suitable, morally or financially to operate such an institution, or that such licensee is not furnishing humane, kind, and adequate treatment and care, the director may cause an order to issue, revoking the license previously issued by him. Upon the issuance of any order of revocation, the person whose license is revoked may appeal in accordance with Sections 119.01 to 119.13, inclusive, of the Revised Code.

A home maintained for elderly members of a fraternal organization in which meals are served only to the residents and employees and to which such member-residents may or may not contribute for their care and maintenance, including meals, is not a food service operation within the meaning of Section 3732.01 (A) (1), Revised Code.

3721.04 *Regulations; standards; license fees.*

The public health council shall make and publish uniform rules and regulations governing the operation of homes defined in Section 3721.01 of the Revised Code, which shall have uniform application throughout the state, and which shall prescribe standards for such homes with respect to, but not limited to, the following matters:

(A) The minimum space requirements for occupants and equipping of the buildings in which such homes are housed so as to insure healthful, safe, sanitary, and comfortable conditions for all residents so long as they are not inconsistent with Chapters 3781. and 3791. of the Revised Code or with any rules and regulations adopted by the board of building standards;

(B) The number and qualifications of personnel, including management and nursing staff, for each class of home;

(C) The medical, nutritional, rehabilitative, and recreational services to be provided by each class of home;

(D) The personal and social services to be provided by each class of home;

(E) The business and accounting practices to be followed and the type of patient and business records to be kept by such homes;

(F) The fees to be charged by the director of health in licensing and inspecting such home which shall not exceed the sum of one hundred dollars annually for any one home and which shall be paid into the nursing and rest home license fee rotary fund to be distributed as provided in Section 3721.02 of the Revised Code.

The council may make whatever additional rules and regulations are necessary to carry out or enforce the provisions of Sections 3721.01 to 3721.09, inclusive, and 3721.99 of the Revised Code. Existing regulations adopted by the public health council with regard to "institutions" as defined under Section 3721.01 of the Revised Code prior to October 20, 1965 shall remain in full force and effect and shall be applicable to "homes" as defined by Section 3721.-01 of the Revised Code until such time as such regulations may be amended or rescinded by the public health council, or superseded by regulations adopted by the board of building standards under authority of division (C) of Section 3721.07 of the Revised Code.

A home maintained for elderly members of a fraternal organization in which meals are served only to the residents and employees and to which such member-residents may or may not contribute for their care and maintenance, including meals, is not a food service operation within the meaning of Section 3732.01 (A) (1), Revised Code.

3721.05 *Annual license required; prohibitions; minimum length of revocation.*

No person, firm, partnership, association, or corporation shall:

(A) Operate a home as defined in Section 3721.01 of the Revised Code without obtaining a license from the director of health;

(B) Violate any of the conditions or requirements necessary for licensing after the license has been issued;

(C) Operate a home after the license for such has been revoked by the director of health;

(D) Interfere with the inspection of a licensed home by any state or local official when he is performing duties required of him by Chapter 3721. of the Revised Code. All licensed homes shall be open for inspection;

(E) Violate any of the provisions of Chapter 3721 of the Revised Code or any rules and regulations adopted pursuant thereto.

Any licensed home which does not pay its annual renewal fee as required by Section 3721.07 of the Revised Code shall have its license revoked automatically.

Any person, firm, partnership, association, or corporation which has its license revoked for any reason other than nonpayment of the annual renewal fee, may not apply for a license under Chapter 3721. of the Revised Code, until a period of one year following the date of revocation has elapsed.

3721.06 *Placement in unlicensed institution.*

No public official or employee shall place any person in, or recommend that any person be placed in, or directly or indirectly cause any person to be placed in any home as defined in Section 3721.01 of the Revised Code which is being operated without a license from the director of health or from a political subdivision certified pursuant to Section 3721.09 of the Revised Code.

3721.07 *Conditions for issuance of license.*

Every person, firm, partnership, association, or corporation desiring to operate a home as defined in Section 3721.01 of the Revised Code shall apply for such a license to the director of health. The director shall issue a license for the home, if after investigation of the applicant and inspection of the home, the following requirements or conditions are satisfied or complied with;

(A) The applicant has not been convicted of a felony or a crime involving moral turpitude;

(B) The applicant is not violating any of the regulations made by the public health council or any order issued by the director of health;

(C) The buildings in which the home is housed have been approved by the department of industrial relations, a certified municipal or county building department, or the state fire marshal. In the approval of a home such agencies shall apply standards prescribed by the board of building standards or building requirements contained in existing regulations adopted by the public health council. The board of building standards shall adopt minimum standards necessary to insure that buildings housing homes initially licensed and occupied prior to August 1, 1958, are located and constructed in such a manner as to be safe and sanitary. Until such time as the board of building standards adopts standards which apply to homes initially licensed and occupied prior to August 1, 1958, such homes shall meet the building requirements of existing regulations adopted by the public health council.

(D) The applicant, if it be an individual, or the principal participants, if it be an association or a corporation, is or are suitable financially and morally to operate a home defined in Section 3721.01 of the Revised Code;

(E) The applicant is equipped to furnish humane, kind, and adequate treatment and care;

(F) The home does not maintain or contain:

(1) Facilities for the performance of major surgical procedures;

(2) Facilities for providing therapeutic radiation;

(3) An emergency ward;

(4) A clinical laboratory unless it is under the supervision of a clinical pathologist who is a licensed physician in this state;

(5) Facilities for radiological examinations unless such examinations are performed only by a person licensed to practice medicine, surgery or dentistry in this state.

(G) The home does not accept or treat out-patients,

except upon the written orders of a physician licensed in this state, maternity cases, boarding children, and transient guests or accept, treat or house persons suffering from active pulmonary tuberculosis.

When the director issues a license, the license shall remain in effect until revoked by the director or voided at the request of the applicant; provided, there shall be an annual renewal fee payable during the month of January of each calendar year, commencing in 1966.

Any applicant who is denied a license may appeal in accordance with Sections 119.01 to 119.13, inclusive, of the Revised Code.

3721.08 *Common Pleas Court has jurisdiction.*

The director of health shall petition the Court of Common Pleas of the county in which the home is located for an order enjoining any person, firm, partnership, association, or corporation, from operating a home as defined in Section 3721.01 of the Revised Code without a license. The court shall have jurisdiction to grant such injunctive relief upon a showing that the respondent named in the petition is operating such a home and is doing so without a license.

3721.09 *Local regulation.*

Sections 3721.02, 3721.03, 3721.04, 3721.05, 3721.07, and 3721.08 of the Revised Code and the regulations adopted pursuant thereto are not applicable in political subdivisions which the director of health, by annual certification, determines have adopted and are enforcing their own standards which are equal to or greater in their requirements than those of Sections 3721.02, 3721.03, 3721.04, 3721.05, 3721.07, and 3721.08 of the Revised Code and the regulations adopted pursuant thereto. Officials of political subdivisions shall co-operate fully with the director and provide him with information which he finds necessary in order to make a determination.

3721.99 *Penalties.*

Whoever violates divisions (A), (B), (C), (D), or (E) of Section 3721.05 or Section 3721.06 of the Revised Code shall be fined one hundred dollars for a first offense; for each subsequent offense, such violator shall be fined five hundred dollars.

Portions of the following ordinances of the Codified Ordinances of the city of Cleveland, are pertinent to the within actions:

INSTITUTIONAL OCCUPANCY

Section 5.1728 [983-299] Institutional Occupancy, Defined.

(a) For the purposes of this Code, Institutional Occupancy is sub-classified as:

Institutional H Occupancy, and Institutional D Occupancy and shall include all buildings and parts of buildings included under such subclassifications.

(b) Institutional H Occupancy classification shall include all buildings and parts of buildings in which people suffering from physical limitations because of health or age are harbored for medical, charitable, or other care or treatment.

(c) Institutional H Occupancy classification shall include, among others:

Hospitals
Sanitariums
Infirmaries
Nursing Homes
Convalescent Homes
Old Folks Homes
Homes for the Aged
Rest Homes
Orphanages
Homes for children under five years of age

(d) Institutional D Occupancy classification shall include all buildings, and parts of buildings in which people are detained for penal or correctional purposes, or where the liberty of the occupants is similarly restricted.

(e) Institutional D Occupancy classification shall include, among others:

Reformatories
Jails
Prisons
Houses of Correction
Penal Institutions
Insane Asylums

Section 5.1729 [983-300].

No provision.

Section 5.1730 [983-301] Zoning.

No building or part of a building shall be erected or altered and no premises shall be used or altered, in violation of the provisions of Chapter 5.11, "Zoning."

Section 5.1731 [983-302] Habitable Rooms.

(a) In buildings and parts of buildings of Institutional H Occupancy, rooms occupied by one or more persons for living or sleeping including private rooms, wards, dormitories, living rooms, day rooms, parlors, sun rooms, enclosed porches, and rooms or spaces of similar use or occupancy shall be deemed to be habitable rooms.

(b) In buildings and parts of buildings of Institutional D Occupancy classification, rooms and spaces similar in use and occupancy to those included under (a) of this section shall also be deemed to be habitable rooms, provided, however, that the requirements of this division applicable to habitable rooms may be waived by the Commissioner of Building and Housing when deemed necessary for the detention or protection of the occupants of the building and when adequate light and ventilation are otherwise provided.

(c) Public dining rooms, auditoriums, workshops, serving kitchens, utility rooms, bathrooms, water closet compartments, kitchens, laundries, pantries, storage rooms, storage spaces, laboratories, operating rooms, and rooms or spaces of similar use or occupancy shall not be deemed to be habitable rooms.

(d) Except as otherwise approved for habitable rooms in buildings and parts of buildings of Institutional D Occupancy by the Commissioner of Building and Housing under the provisions of (b) of this section, the minimum sizes, arrangement and light and ventilation of habitable rooms shall conform to the applicable provisions of Sections 5.1508, 5.1509 and 5.1510.

(e) Every room occupied as a habitable room shall have at least 400 cubic feet of air for each person twelve years of age or older and 200 cubic feet of air for each

child under twelve years of age occupying such rooms; and no rooms shall have sleeping accommodations for more persons than can be accommodated on that basis.

Section 5.1732 [983-303] Height and Area Restrictions. (Adopted 6/27/49.)

(a) The height of buildings of Institutional Occupancy classification of the various types of construction shall be restricted as follows:

(b) The areas within exterior walls, or within exterior walls and a fire wall or fire walls, shall be restricted as prescribed in the following Table A-1.

(c) The height of buildings, according to the Height Districts in which they are located; and the gross floor area of buildings in Residence District, are also restricted by Sections 5.1136 to 5.1148 inclusive of Chapter 5.11, "ZONING." (See Table, page 30.)

It appears that in 1965 State requested a review, by municipal building departments, of prior approvals of buildings in which so-called nursing homes were housed. The continued use of the second floors of Box's buildings was disapproved by the Cleveland Building Department and the order of disapproval was appealed to the Board. Several hearings were conducted by the Board. On December 20, 1965, it refused to grant the requested approval and/or permission. The Board assigned a separate docket number for each building and entered separate orders although they appear from the transcript to have been considered together. The orders as to each building are identical.

The discussion and decision by the court is applicable to both buildings.

The December 20, 1965, orders of the Board were appealed by Box to this court in case No. 822-796. Applications by Box for a license from State to operate a home (Section 3721.07, Revised Code), were denied for the sole reason that the buildings did not have the current approval of the Cleveland Building Department. These denials are the subject of the appeals by Box to this court in cases No. 828-803 and 843-622.

**TABLE SECTION 5.1732**

**HEIGHT RESTRICTIONS OF BUILDINGS OF INSTITUTIONAL OCCUPANCY CLASSIFICATION**

| Type of Construction | Height Restrictions | |
|---|---|---|
| | Institutional H (above grade level) | Institutional D (above grade level) |
| Type I-A, I-B, or I-C, FIREPROOF | No Limit | No limit |
| Type II-A, INCOMBUSTIBLE, ¾ hour protected | 2 stories in 35 ft. | 2 stories in 35 ft. |
| Type II-B, INCOMBUSTIBLE, less than ¾ hour protected | 2 stories in 35 ft. | 2 stories in 35 ft. |
| Type III-A, EXTERIOR PROTECTED, Heavy Timber | 1 story | Not allowed |
| Type III-B, EXTERIOR PROTECTED, Ordinary Joist—¾ hr. protected | 1 story* | Not allowed |
| Type III-C, EXTERIOR PROTECTED, Ordinary Joist—less than ¾ hr. protected | Not allowed | Not allowed |
| Type IV-A, WOOD CONSTRUCTION, ¾ hour protected | 1 story in 20 ft.* | Not allowed |
| Type IV-B, WOOD CONSTRUCTION, less than ¾ hour protected | Not allowed | Not allowed |

*Two stories in 35 feet by special permission from the Board of Building Standards and Building Appeals, subject to the safeguards prescribed by said Board, and provided that:

1. The building otherwise conforms to the provisions of this Code and, in existing buildings, all fire protection and protective and warning devices and safety measures specified by this Code as required within one year and less of the effective date of this Code, have been or will be, provided.

2. The building is effectively firestopped at each floor level; when necessary, interior finish shall be removed to ascertain the extent of existing firestopping and to permit installation of required additional firestopping.

3. Whenever the number of occupants above the first story level exceeds 10, the second story is divided into two fire areas by means of a ¾ hour fire separation arranged to serve as a horizontal exit.

4. No part of the building above the first story level will at any time be occupied by any bedridden, helpless, or incapacitated patient or resident, or by any child under five years of age, or by any person suffering from senility or mental decline or other mental or physical infirmity and unable to evacuate the premises independently and without help or guidance from others.

5. No part of the building above the second story level will be occupied, or arranged so that it can be occupied, by any person.

## TABLE SECTION 5.1732

## TABLE A-1

## AREA RESTRICTIONS OF BUILDINGS OF INSTITUTIONAL OCCUPANCY CLASSIFICATION

| No. of Stories | Type I, FIREPROOF (I-A, I-B, or I-C) Max. Area Sq. Ft. | | Type II-A, INCOMBUSTIBLE ¾ Hr. Protected Max Area Sq. Ft. | | Type II-B, INCOMBUSTIBLE less than ¾ Hr. Protected Max Area Sq. Ft. | | Type III-A, EXTERIOR PROTECTED, Heavy Timber Max. Area Sq. Ft. | | Type III-B, EXTERIOR PROTECTED, Ord. Joist— ¾ Hr. Protected Max Area Sq. Ft. | | Type III-C, EXTERIOR PROTECTED, Ord. Joist— less than ¾ Hr. Protected Max Area Sq. Ft. | | Type IV-A, WOOD CONSTRUCTION, ¾ Hr. Protected Max. Area Sq. Ft. | | Type IV-B, WOOD CONSTRUCTION, less than ¾ Hr. Protected Max Area. Sq. Ft. | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Inst. H. | Inst. D. | Inst. H. | Inst. D. | Inst. H. | Inst. D. | Inst. H. | Inst. D. | Inst. H. | Inst. D. | Inst. H. | Inst. D. | Inst. H. | Inst. D. | Inst. H. | Inst. D. |
| 1 | No Limit on Height or Area | | 9000 | 6000 | 8000 | 6000 | 4000 | Not Allowed | 8000 | Not Allowed | Not Allowed | | 5000 | Not Allowed | Not Allowed | |
| 2 | | | 9000 | 6000 | 4000 | 4000 | Not Allowed | | 4000 | Not Allowed | Not allowed | | 3000 | Not Allowed | Not Allowed | |

The Box operations have apparently, in general, been in conformity with all state requirements and have satisfactorily passed all required state inspections. (Section 3721.02, Revised Code.) The manner in which Box conducts its operations is not an issue before this court.

The appeals from the orders of State are pursuant to Sections 119.01 to 119.13, Revised Code. The records certified to this court in the appeals from the denials by State of licenses requested by Box (Common Pleas cases No. 828-803 and 843-622) do not contain either the original application or certified copies thereof despite the requirements of Section 119.12, Revised Code, of the Adminsitrative Procedure Act. This specifies that the * * *"Agency shall prepare and certify to the court, a *complete record* of the proceedings in the case." (See *Brockmeyer* v. *Ohio Real Estate Commission*, 5 Ohio St. 2d 229.) Counsel for State, however, has forwarded copies of the applications to the court and they are considered as being part of the record. The most recent application requests a license to operate a Home for the Aging.

The appeal to this court from the orders of the Board is pursuant to the provisions of Chapter 2506., Revised Code. This chapter provides for appeals from orders of administrative officers and agencies of any political subdivision of the state. Every final order, adjudication or decision of a board, such as the Cleveland Board of Building Standards and Building Appeals may be reviewed by the Common Pleas Court (Section 2506.01, Revised Code). Within thirty days after filing the notice of appeal, the officer or agency must prepare and file in the court, a complete transcript of all the original papers, testimony and evidence offered, heard and taken into consideration in issuing the order appealed from (Section 2506.02, Revised Code). The court hearing shall proceed as in the trial of a civil action but the court shall be confined to the transcript, unless it appears on the face of said transcript or by affidavit filed by the appellant, that there were certain deficiencies in the proceedings or in the transcript, as specified in Section 2506.03, Revised Code.

The original transcript filed herein does not contain a

transcript of the original papers. If any testimony and evidence was offered, heard or taken into consideration by the Board, it is impossible to ascertain it from the transcript. There is nothing to indicate that any testimony was given under oath.

The following is what is shown by the transcript that occurred with reference to the subject buildings:

*Meeting of September 27, 1965:*

"Secretary Fransen read the violation notice and appeal statement, while the Board reviewed the plans.

Chairman Gavin asked for comments from Mr. O'Brien.

Mr. O'Brien stated that in March 1942, the Zoning Board gave approval to the appellant; that permit was issued in 1951 for 26 patients with the restriction of bedridden patients to first floor. Secretary Fransen suggested that current reports be obtained by the Building and Fire Prevention Bureau and that Mr. Gavin accompany the building inspector on a tour of inspection.

Mr. Carbone entered a motion, seconded by Mr. Mumma, to postpone the subject docket two weeks pending an inspection tour by Mr. Gavin and submittal of current reports by the Building and Fire Departments."

*Meeting of October 18, 1965:*

"Action deferred for one week."

*Meeting of October 25, 1965:*

"Action was deferred two weeks."

*Meeting of November 1, 1965:* (R. 5)

"The following postponed dockets were acted upon as indicated":

Docket A-84-65

Appellant: Oakwood Sanitarium

8909 Detroit Avenue

Subject: Appeal, Violation Codified Ordinances

Docket A-85-65

Appellant: Oakwood Sanitarium

9007 Detroit Avenue

Subject: Appeal, Violation Codified Ordinances

"The Board instructed the secretary to prepare a tentative resolution for the next meeting."

(The record does not disclose receipt of a report from

the fire department or the building department, as ordered on September 27, nor that any evidence was taken by the Board. However, the secretary was instructed to prepare a tentative resolution for the next meeting.)

*Meeting of November 8, 1965:*

The minutes of this meeting indicate that "the Board was advised by counsel for Box that this is pre-existing conversion for institutional nursing home; that approval was granted in 1941 before the Board of Building Standards was established; that the Department of Health has always given their approval. Discussion took place regarding the classification of patients living in the homes." Mr. O'Brien stated that if patients are considered mild mental it would be necessary for the building division to classify the home as Institutional D; that under that classification occupancy would not be allowed in the present structure which is IIIB. Question was asked, "Who classified the patients?" The appellant answered, "The State." It was pointed out that if patients are classified as "mild mental," there has been a change of occupancy.

The matter was postponed for two weeks for further review and report from the Division of Health.

*Meeting of November 22, 1965.*

"Secretary Fransen read report from the Fire Prevention Bureau dated October 1, 1965."

(Neither the report nor a statement of its contents is in the transcript.)

"Discussion ensued regarding classification of the above cases; that the homes could be typed as Institutional D. Chairman Gavin stated that the Board would study this matter further."

*Meeting of November 29, 1965:*

"Action deferred one week pending further review."

*Meeting of December 6, 1965:*

"Secretary Fransen stated that the above two dockets were classified as Institutional D, (Mild Mental) by the restriction of patients within the building; that the subject dockets be acted upon at the next meeting.

"The secretary was instructed to draft tentative resolutions to allow six months for compliance."

*Meeting of December 20, 1965:*

"The following listed dockets had an open hearing and action was taken as recorded in the resolution or as otherwise noted":

Docket A-84-65

Appellant: Oakwood Sanitarium

Mailing Address: 9007 Detroit Avenue

Property at: 8909 Detroit Avenue

Subject: Appeal, Violation Codified Ordinances.

Appearances: Ernest and Grace Box, Lessees; H. E. Miller, Adm., Lody Huml, attorney; Hubert C. Neal, owner, land

A resolution was adopted that contains the following:

"Be it resolved, that the appeal requesting approval of second floor for patient use is hereby denied; that a permit shall be obtained for removal of patients in compliance with the Codified Ordinances on or before March 15, 1966."

Subsequent to the adoption of the original resolutions by the Board, Box filed "Motion to Vacate and Rescind Order of December 20, 1965." This had not been acted upon when these actions first came on for hearing by this court. At that time the matter was, by agreement of all parties, remanded for a further hearing and decision by the Board.

Pursuant thereto a hearing was conducted by the Board and testimony was received under oath in behalf of Box and also in behalf of the action by the building department. A resolution was adopted which in effect affirmed the previous action and includes the following:

"Be it resolved, that the appeal requesting approval of second floor for patient use is hereby denied; that a permit shall be obtained for removal of patients and compliance with the codified ordinances on or before September 30, 1967; that a copy of this ruling be certified and furnished the Court of Common Pleas."

A certified copy of the latter proceedings was filed with this court on September 14, 1967.

These causes subsequently came on for hearing by the court and were argued by counsel for Box, the Board, and the State.

The court under the provisions of Section 2506.04, Revised Code, must determine whether it should affirm, reverse, vacate or modify the order appealed from based solely upon "probative evidence on the whole record."

The only "evidence on the whole record" is that contained in the transcript filed on September 14, 1967.

The original transcript presents nothing for consideration by the court. It is not shown that there was *any* testimony under oath. The Supreme Court of Ohio has held that under such circumstances there was no evidence.

*Arcaro Bros. Building, Inc.,* v. *Zoning Board of Appeals, City of North College Hill,* 7 Ohio St. 2d 32, page 33.

"Section 2317.30, Revised Code, provides:

"Before testifying, a witness shall be sworn to testify the truth, the whole truth, and nothing but the truth.

"Thus the record in this appeal contains no evidence."

Although the original transcript refers to requests for, and reports from, the fire department, the building department, and the health department, and it appears that one or more such reports may have been received, they are not attached to or contained in the transcript.

The transcript of September 14, 1967, contains the only reports of any kind from the fire department and these indicate that the fire department considers the operation, occupancy, and fire alarm protection to be adequate.

The current license which Box wants the state to issue is one authorizing it to operate a Home for the Aging (Section 3721.01 (C), Revised Code), with the first floors licensed as a nursing home and the second floors licensed as a rest home. The issuance of this license requires the approval of the use of the building by a certified municipal building department. Box has not received this approval. Since the use of the first floor apparently has all required approvals and since Box is not asking that the second floor be licensed as a nursing home—but as a rest home—the denial by the Board constitutes a denial of permission for use of the second floor as a rest home.

It appears from the only "evidence" in the transcript

that it was feared that if the second floors were approved for rest home use they might be utilized for housing persons requiring nursing home care. By classifying the building as Institutional D Occupancy, permission for any type or use of the second floors as a "home" is precluded.

Box has continually and lawfully operated its home since 1942 with the approval of the city of Cleveland and under license issued by State. A Home for the Aging is defined as follows:

(Section 3721.01 (C), Revised Code.) "A home for the aging is any home which provides personal assistance, for a consideration or not, for three or more persons who are dependent on the services of others by reason of age and physical or mental impairment, but do not require skilled nursing care, and which also provides skilled nursing care, for a consideration or not, for three or more persons who by reason of age and either illness, physical or mental impairment require skilled nursing care. That facility, part, or unit thereof, that provides personal assistance is licensed as a rest home pursuant to Sections 3721.01 to 3721.09, inclusive, and Section 3721.99, Revised Code. That facility, part, or unit thereof, that provides skilled nursing care is licensed as a nursing home pursuant to Sections 3721.01 to 3721.09, inclusive, and Section 3721.99, Revised Code."

Whether or not Box should be permitted to operate a Home for the Aging, as it apparently has lawfully done since 1942, must be determined from the transcript of September 14.

Is the denial by the Board of special permission for Box to use the second floor of its property, in accordance with the provisions of City of Cleveland Ordinances 5.1732 (Enacted June 27, 1949) as a rest home "supported by the preponderance of substantial, reliable and probative evidence on the whole record"—in this case on the September 14 transcript?

The evidence submitted by Box as contained in that transcript is as follows:

Herbert E. Miller, the administrator of the subject

home, testified that patients who had been classified by the Board in its orders of December 20, 1965, as "Nursing or Mild Mental" did not occupy the second floor; that there previously had been occupants, who had been discharged as cured by a mental hospital, and then placed with Box by the Division of Aid, but in view of their discharge they could not be classed as mental patients; (R. 12) that each building had four excess routes from the second floor; that the building had been fireproofed some years back at a cost of Forty Thousand Dollars ($40,000) (R. 14); that the building was rewired three years before so that it passed the city and state inspection (R. 14); that although the Ohio Department of Health regulations require one staff member for every seven patients, the Box home has thirty staff members for sixty-one patients.

Dr. Harry E. Boehmer, M. D., graduate of Western Reserve University Medical School, testified that he has been house physician for the Box Home for ten years (R. 21); that all patients on the second floor are ambulatory (R. 23); that all occupants who had been classified "Mild Mental" were confined to the first floor; that no patients with chronic disabilities are housed on the second floor (R. 26); that some persons who suffer "lapse of memory," being "disoriented," a condition "generally associated with age," are housed on the second floor (R. 27); that some of the patients are incontinent "A". In varying degrees, I would say fifty percent."

A communication, Exhibit No. 1, from the City of Cleveland Department of Public Safety, Division of Fire, was made a part of the record (R. 35) when the official who wrote the letter was unable to attend the hearing. The exhibit, dated June 7, 1967, reads as follows:

"In re: 8909-9007 Detroit Avenue,

"Oakwood Nursing Home

"Dear Sir, I have been the institutional inspector for the Division of Fire for over ten years. In that period, I have inspected the subject location many times and have found the operators to be cooperative.

"The home is protected by a complete automatic fire detection system and an interior fire alarm system, supervised by the operators of the Home. This coverage is deemed to be adequate by the Division of Fire for the occupancy involved.

"Very truly yours,

(ss.)   M. J. Madden, Captain
Fire Prevention Bureau."

The following is the only testimony submitted in support of the action by the building department (R. 38). Testimony of Stephen A. Shepley:

*by Mr. Chavers:*

"Q. Would you state your name and your address, please? A. Stephen A. Shepley.

"Q. Your address, please? A. 3109 West 140th Street.

"Q. What is your employment, sir? A. I am staff assistant.

"Q. To whom? A. To Mr. Fransen. (Mr. Fransen is executive secretary, Board of Building Standards and Building Appeals.)

"* * *

"Q. Generally, would you know whether this would be a fireproof structure or not? A. I wouldn't swear to it, no.

"Q. Are you familiar with the structure at 8909-9007 Detroit? A. I merely looked from the exterior.

"Q. Are you aware of the classification? A. Not off hand, I wouldn't know.

"Q. Would you know whether or not they are fireproof structures?

"Mr. Huml: Objection.

"A. No, I wouldn't.

"Mr. Chavers: No further question.

"Mr. Huml: No examination."

It appears to be the intention that all aged persons who may have episodes of incontinence or are incontinent in a mild degree, should be classified as mental patients. Further, since the exterior doors have at times been kept

locked, that, therefore, the Box home should be classified Institutional "D" and placed in the same category as all penal institutions and insane asylums. The record does not disclose whether any of the fifty per cent that are incontinent "in varying degrees" are housed in the first or the second floors.

Municipal Code Ordinance 5.1728 defines and classifies Institutional Occupancy:

This ordinance is herein before completely set out and provides that the Institutional H Occupancy classification includes all buildings in which people suffering from physical limitations because of health or age are harbored for medical, charitable or other care or treatment, and includes nursing homes, old folks homes, homes for the aged, rest homes, orphanages, etc.

"Institutional 'D' occupancy includes all buildings in which people are detained, for penal or correctional purposes or where the liberty of the occupancy is *similarly* restricted, and this includes reformatories, jails, prisons, penal institutions and insane asylums."

It is inconceivable that the subject buildings should be classified with prisons and insane asylums (Institutional "D" Occupancy) when the ordinances specifically include hospitals, nursing homes, rest homes, etc., in the Institutional "H" Occupancy, and each of them has some occupants who are incontinent, in some degree, and has some locked doors.

The substance of the Board's orders is that the second floors may not be used in any manner as a "home," as defined by Section 3721.01, Revised Code, and also as restricted by Section 5.1732 of the Codified Ordinances of the city of Cleveland.

The court appreciates that there is a very fine distinction between occupants of a home who "require skilled nursing care" (Section 3721.01(A), Revised Code), and those "who are dependent on the services of others by reason of age or physical or mental impairment but who do not require skilled nursing care" (Section 3721(B), Revised

Code). The requirements as to care may actually vary from day to day in one person.

The Legislature obviously recognized the need for the licensing of a home where one ''part, facility, or unit thereof'' is licensed as a rest home, and another ''facility, part, or unit thereof'' is licensed as a nursing home. The requirements for the licensing of the one part may vary, as in the instant case, from the requirements for the licensing of the other part.

When the physical or mental condition of an occupant of a rest home changes either temporarily or permanently so that he requires skilled nursing care, he must be housed in that part or facility of a ''home'' that provides skilled nursing care. Such part or facility may be subject to more stringent requirements than a rest home.

In the instant case under the provisions of city of Cleveland Ordinance 5.1732, a building which is of the type of the subject structure, the part, facility, or unit housing those occupants that should be in a nursing home, instead of a rest home, may not be *housed* above the first floor level.

Box insists, and the evidence sustains its insistence, that the second floors are not occupied by persons who should be in a nursing home or who should not be housed above the first floor because of provisions of the Codified Ordinances of the city of Cleveland.

The second floors of the subject premises may lawfully be used as a rest home. They may not lawfully be used as a nursing home, or otherwise in violation of Cleveland Codified Ordinances No. 5.1732.

The fact that an agency may believe that a structure will at times be put to a use other than that for which it has been approved or licensed does not authorize the agency to withhold the approval or issuance of a license authorizing it to be used in accordance with the law.

Failure to use its premises or operate its business in accordance with a license subjects a licensee to penalties that are provided by law (See Section 3721.05, Revised Code). There is no valid reason for denying Box the right

to use the second floors of its premises as a rest home because it might use those parts for the housing of a person whose condition may require that he be cared for in a nursing home, or who may not otherwise be lawfully cared for in the second floor facility, part, or unit.

The sworn testimony of the administrator for Box, was that the premises were kept unlocked. However, when the court conducted a view of the premises in company with counsel, the exterior doors were found to be locked. A part of the decree to be entered herein, shall include a court order—enforceable as such—requiring the exterior doors to be kept unlocked from the inside at all times the subject houses are occupied as a "home."

It has been represented that required approvals have been given by the Cleveland Building Department and/or Board for the use of the first floors of the subject premises as a nursing home. If such formal approval has not been given, it is the finding of the court that they should be so approved.

Counsel for Box shall prepare one journal entry, for filing in all cases, and to be submitted to all counsel for their approval providing that:

(1) The first floors of the buildings at 8909 and 9007 Detroit Avenue, Cleveland, Ohio, be approved for use as a nursing home.

(2) The second floors of the buildings at 8909 and 9007 Detroit Avenue, Cleveland, Ohio, be approved for use as a rest home as defined in Section 3721.01, Revised Code, but, in accordance with city of Cleveland Codified Ordinances 5.1732, they may not at any time be occupied by any bed-ridden, helpless or incapacitated patient, or resident, or by any child under five years of age, or by any person suffering from senility or mental decline or physical infirmity and unable to evacuate the premises independently or without help or guidance from others.

(3) Box be ordered to keep the exterior doors of the premises in an unlocked position at all times from the inside.

(4) The Director of Health of the state of Ohio shall forthwith issue to Box a license, for the current period, authorizing the use of the subject premises as a Home for the Aging in accordance with this memorandum. It appearing that Box's license to operate has expired during this appeal, the state shall issue such license to Box for a Home for the Aging upon payment of the fee prescribed by law for the license.

(5) Insofar as the order of the Board which is the subject of the appeal in Case No. 822-796 is inconsistent with the decree of this court, it is in such respects, found to be unsupported by the preponderance of substantial, reliable, and probative evidence on the whole record and is hereby modified (Section 2506.04(6), Revised Code).

(6) Insofar as the orders of the Director of Health which are the subject of the appeals in Cases No. 838-803 and 843-622 are inconsistent with the decree of this court, they are in such respects, found not to be supported by reliable, probative and substantial evidence and in accordance with law, and are therefore hereby reversed (Section 119.12(7), Revised Code).

(7) Judgment for costs shall be entered in each case in favor of Box.